IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADVANCE MAGAZINE PUBLISHERS INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>　　　　Defendants. | Case No. 22-cv-01152 |

## COMPLAINT

Plaintiff Advance Magazine Publishers Inc. ("Plaintiff" or "Vogue") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiff's federally registered Vogue trademarks (the "Counterfeit Vogue Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Vogue Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Vogue is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Vogue Products over the Internet. Vogue has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4. Advance Magazine Publishers Inc. is an American media company, doing business as Condé Nast, a global mass media company founded in 1909 by Condé Montrose Nast. Its headquarters are located at One World Trade Center in New York City. Condé Nast media brands include Allure, GQ, The New Yorker, Vanity Fair, and Vogue.

5. Vogue is an internationally recognized fashion and lifestyle brand founded by Arthur Baldwin Turnure in 1892. Based in New York City, Vogue runs a fashion and lifestyle magazine that covers many topics including fashion, beauty, culture, living, and runway. Vogue began as a weekly newspaper and years later, launched the monthly magazine known worldwide.

6. Vogue sells many high-quality products, including, but not limited to, clothing and apparel such as shirts, sweatshirts and sweatpants, featured prints illustrating various Vogue photos, Vogue magazine covers and illustrations such as canvas prints, framed prints, metal prints and acrylic prints as well as products such as playing cards, jigsaw puzzles, wrapping paper and coffee mugs, to carefully control customer experiences and further enhance the appeal of the Vogue brand (these and other genuine Vogue branded products are collectively referred to herein as the "Vogue Products").

7. Since its founding in 1892, the Vogue media brand and more recently the associated unique and highly desirable Vogue Products have led to enormous growth and financial success for Vogue. Vogue consistently generates annual revenue in the hundreds of millions of dollars. The root of this financial success lies in Vogue's global audience and reputation and its ability to consistently deliver highly desirable Vogue Products.

8. Vogue Products have become enormously popular and iconic, driven by Vogue's arduous quality standards and innovative design. Among the purchasing public, genuine Vogue Products are instantly recognizable as such. In the United States and around the world, the Vogue brand has come to symbolize high quality, and Vogue Products are among the most recognizable in the world.

9. Vogue maintains a large audience and following, amassing 22.5 million readers of its monthly printed magazine, 86.2 million unique digital users, and 167.5 million followers on social media. Vogue Products are sold exclusively through authorized retail channels and online at condenaststore.com and shop.vogue.com where Vogue promotes and sells genuine Vogue Products. The condenaststore.com and shop.vogue.com websites feature proprietary content, images and designs exclusive to Vogue.

10. Vogue's business approach has provided Vogue with a competitive advantage that is responsible for the brand's strong financial performance. The brand has earned numerous industry awards and accolades. As an example, in 2015, Vogue magazine took home the grand prize as Magazine of the Year at the US National Magazine Awards.

11. Vogue's trademarks are critical to its business. Vogue is the owner of and has widely promoted several trademarks which have earned substantial fame and considerable goodwill among the public. Vogue has used its trademarks (collectively, the "VOGUE Trademarks") on and in association with its products and e-commerce. Vogue Products include at least one of the VOGUE Trademarks. Vogue uses the VOGUE Trademarks in connection with the marketing of its Vogue Products. Vogue has registered many of its VOGUE Trademarks with the United States Patent and Trademark Office, including, but not limited to, the following VOGUE Trademarks.

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 6,248,343 | VOGUE | For: Plastic coasters in class 21. |
| 6,181,442 | VOGUE | For: Stationery in class 16. |
| 6,131,876 | VOGUE | For: Playing cards in class 28. |
| 5,897,368 | VOGUE | For: Notebooks in class 16. |
| 5,776,006 | VOGUE | For: calendars in class 16. |
| 5,454,848 | VOGUE | For: jigsaw puzzles in class 28. |
| 5,686,488 | VOGUE | For: Paper for wrapping and packaging; Gift wrapping paper in class 16. |
| 1,659,761 | VOGUE | For: tote bags in class 18. |
| 1,666,656 | VOGUE | For: paper cube pads, pens, and pencils in class 16. |
| 1,336,659 | VOGUE | For: Magazines in class 16. |
| 504,006 | VOGUE | For: Magazines in class 16. |
| 6,289,836 | VOGUE | For: Fitness apparel, namely, tops and bottoms; tops as clothing in class 25. |
| 5,398,198 | VOGUE | For: Lingerie, pajamas, shirts and sweatshirts in class 25. |
| 5,645,061 | VOGUE | For: tote bags; shoulder bags; toiletry bags sold empty; luggage; travel accessories, namely, luggage tags; grooming kit bags sold empty; shaving kit bags sold empty; and dopp kit bags sold empty in class 18. |
| 5,428,664 | VOGUE | For: Handbags and wristlets in class 18. |
| 5,413,137 | VOGUE | For: Sweatshirts, hoodies, pajamas and shirts in class 25. |

5

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 5,655,921 | VOGUE | For: hand bags, totebags, luggage in class 18. |
| 2,701,928 | VOGUE | For: clothing, namely, T-shirts in class 25. |
| 125,542 | VOGUE | For: Magazines in class 16. |
| 103,770 | VOGUE | For: Patterns in class 16. |

12. The above U.S. registrations for the VOGUE Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the VOGUE Trademarks constitute *prima facie* evidence of their validity and of Vogue's exclusive right to use the VOGUE Trademarks pursuant to 15 U.S.C. § 1057(b). The VOGUE Trademarks have been used exclusively and continuously by Vogue and its subsidiaries for many years, and have never been abandoned. Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the VOGUE Trademarks included in the above table.

13. The VOGUE Trademarks are exclusive to Vogue and are displayed extensively on Vogue Products and in Vogue's marketing and promotional materials. Vogue expends millions of dollars annually promoting and marketing the VOGUE Trademarks. Vogue Products have also been the subject of extensive unsolicited publicity resulting from their high-quality,

6

innovative designs and renown as desired luxury items. Because of these and other factors, the Vogue name and the VOGUE Trademarks have become famous throughout the United States.

14. The VOGUE Trademarks are distinctive when applied to the Vogue Products, signifying to the purchaser that the products come from Vogue and are consistent with Vogue's quality standards. Whether Vogue manufactures the products itself or licenses others to do so, Vogue has ensured that products bearing the VOGUE Trademarks are manufactured to the highest quality standards. The VOGUE Trademarks have achieved tremendous fame and recognition which has only added to the distinctiveness of the marks. As such, the goodwill associated with the VOGUE Trademarks is of incalculable and inestimable value to Vogue.

**The Defendants**

15. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Vogue. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

16. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Vogue to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Vogue will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

17. The success of the Vogue brand has resulted in significant counterfeiting of the VOGUE Trademarks. Consequently, Vogue has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Vogue has identified many fully interactive, e-commerce stores offering Counterfeit Vogue Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, and DHgate, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to U.S. Customs and Border Protection (CBP), most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online counterfeiters. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States* prepared for The Buy Safe America Coalition by John Dunham & Associates (**Exhibit 2**). The bulk of counterfeit products sent to the United States "come from China and its dependent territories," accounting for over 90.6% of all cargo with intellectual property rights (IPR) violations. *Id.* Of the $1.23 billion in total IPR violations intercepted, $1.12 billion was from China. *Id.* Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. *Id.*

18. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of*

*the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

19. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Vogue Products to residents of Illinois.

20. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller

Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Vogue has not licensed or authorized Defendants to use any of the VOGUE Trademarks, and none of the Defendants are authorized retailers of genuine Vogue Products.

21. Many Defendants also deceive unknowing consumers by using the VOGUE Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Vogue Products. Other e-commerce stores operating under the Seller Aliases omit using the VOGUE Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Vogue Products.

22. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

23. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Vogue Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

24. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for

identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Vogue Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Vogue Products were manufactured by and come from a common source and that Defendants are interrelated.

25. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

26. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Vogue's enforcement. E-commerce store operators like Defendants maintain off-shore accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Vogue. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

27. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Vogue Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or

license from Vogue, have jointly and severally, knowingly and willfully used and continue to use the VOGUE Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Vogue Products into the United States and Illinois over the Internet.

28. Defendants' unauthorized use of the VOGUE Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Vogue Products, including the sale of Counterfeit Vogue Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Vogue.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

29. Vogue hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

30. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered VOGUE Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The VOGUE Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from the Vogue Products offered, sold or marketed under the VOGUE Trademarks.

31. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the VOGUE Trademarks without Vogue's permission.

32. Vogue is the exclusive owner of the VOGUE Trademarks. Vogue's United States Registrations for the VOGUE Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Vogue's rights in the VOGUE

Trademarks, and are willfully infringing and intentionally using counterfeits of the VOGUE Trademarks. Defendants' willful, intentional and unauthorized use of the VOGUE Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Vogue Products among the general public.

33. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

34. Vogue has no adequate remedy at law, and if Defendants' actions are not enjoined, Vogue will continue to suffer irreparable harm to its reputation and the goodwill of its well-known VOGUE Trademarks.

35. The injuries and damages sustained by Vogue have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Vogue Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

36. Vogue hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

37. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Vogue Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Vogue or the origin, sponsorship, or approval of Defendants' Counterfeit Vogue Products by Vogue.

38. By using the VOGUE Trademarks in connection with the sale of Counterfeit Vogue Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Vogue Products.

39. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Vogue Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

40. Vogue has no adequate remedy at law and, if Defendants' actions are not enjoined, Vogue will continue to suffer irreparable harm to its reputation and the goodwill of its Vogue brand.

## PRAYER FOR RELIEF

WHEREFORE, Vogue prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the VOGUE Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Vogue product or is not authorized by Vogue to be sold in connection with the VOGUE Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Vogue product or any other product produced by Vogue that is not Vogue's or not produced under the authorization, control, or supervision of Vogue and approved by Vogue for sale under the VOGUE Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Vogue Products are those sold under the authorization, control, or

        supervision of Vogue, or are sponsored by, approved by, or otherwise connected with Vogue;

    d. further infringing the VOGUE Trademarks and damaging Vogue's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Vogue, nor authorized by Vogue to be sold or offered for sale, and which bear any of Vogue's trademarks, including the VOGUE Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Vogue's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the VOGUE Trademarks;

3) That Defendants account for and pay to Vogue all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the VOGUE Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Vogue be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the VOGUE Trademarks;

5) That Vogue be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 4th day of March 2022.      Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Abby M. Neu
Marcella D. Slay
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
aneu@gbc.law
mslay@gbc.law

*Counsel for Plaintiff*
*Advance Magazine Publishers Inc.*